PER CURIAM.
This is an appeal from a judgment against appellant (Bank) in favor of Electrical Enterprises, Inc. (Electrical) for $3,275.64 and for Keene Mechanical, Inc. (Keene) in the sum of $2,560.
Virginia Construction, Inc. (Virginia), a company engaged in the general contracting business, had a checking account at Bank. This was a general operating account into which deposits from various sources were made[1] and from which Virginia paid its overhead and operating expenses as well as its subcontractors.[2] A substantial part of Virginia’s work was in the construction of Winn-Dixie Stores, but Virginia also did general contracting work for other parties. Electrical and Keene were the subcontractors on two of Virginia’s Winn-Dixie jobs. On May 4, 1973, Vir *928 ginia issued its check drawn on Bank to Electrical for $3,275.64 and obtained an executed waiver of lien in exchange for the check. On May 9, 1973, Virginia issued its check to Keene drawn on Bank for $2,560 and obtained a waiver of lien. On May 9, 1973, Bank exercised its right of setoff against funds on deposit in Virginia’s account because of Virginia’s default in obligations owed by Virginia to the Bank. Subsequent to May 9, 1973, the foregoing checks were presented for payment but they were not paid because by this time there were no more funds in the account.
Electrical and Keene brought suit against Bank for the monies represented by their checks. The suits were consolidated for trial. The court held that by virtue of Section 713.34(3), Florida Statutes (1973), the monies deposited by Virginia were impressed with a trust for the benefit of subcontractors, materialmen, and laborers and that Bank knew or had sufficient knowledge of facts to charge it with notice that the money taken by it pursuant to its right of setoff was impressed with this trust. The court concluded that both Electrical and Keene qualified as subcontractors for whom the funds were being held in trust and entered judgment in their favor against Bank.
Section 713.34(3) is a criminal statute which reads as follows:
“(3) Any person, firm, corporation or agent, officer or employee thereof who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property, for any other purpose than to pay for labor or services performed on or materials furnished for this specific improvement, while any amount for which he may be or become liable for such labor, services, or materials remains unpaid shall be guilty of embezzlement and shall be prosecuted and, upon conviction, punished in accordance with the provisions of the laws of this state; provided, however, that failure to pay for such labor, services or materials furnished for this specific improvement after receipt of such proceeds shall constitute prima facie evidence of intent to defraud.”
Assuming without deciding that this statute has civil application in the sense that a person receiving such funds holds them in a trust capacity,[3] we nevertheless conclude that upon this record, judgment should have been entered in favor of Bank.
At the outset, we note a paucity in the proof that the monies Virginia received for the jobs upon which Electrical and Keene were working ever went into the bank account in question. The most that can be gleaned is that Virginia’s bookkeeper testified he thought that all of the payments for Winn-Dixie jobs were deposited into this account. In any event, even if it could be said that the funds from the proper jobs had been traced into this account, there was insufficient evidence upon which the Bank could be charged with the knowledge that these funds were impressed with a trust for the benefit of subcontractors such as Keene and Electrical.
The general law on the subject of bank setoffs is well stated in Aetna Casualty and Surety Company v. Atlantic National Bank of West Palm Beach, 430 F.2d 574 (5th Cir. 1970), when the court said:
“. ■ [A] bank has a right in Florida to set-off against deposits made in the ordinary course of business; but . this is not so if the bank had actual knowledge that the funds deposited with it belonged to a party other than a depositor, or where the bank has knowledge of sufficient facts to charge it with notice of an existing interest of a third party in and to the deposited funds. .
There is an excellent annotation on this subject at 8 A.L.R.3d 235 (1966). Part IV of this annotation entitled “What constitutes knowledge or notice of third person’s interest” lists five categories of notice. The last of these refers to actual notice, but since neither Keene nor Electrical asserts that the Bank had actual notice that the money was being held in trust, this category need *929 not be considered.[4] The remaining four categories which correspond to the section numbers of the annotation are set forth below and shall be discussed with reference to the facts of this case.
1. Section 9 — Special designation of accounts in which funds are deposited. For example, had the account in this case been designated “Virginia Construction, Inc., Trustee,” such a designation would have constituted notice to the Bank. Cf. Emile v. Bright, 203 So.2d 328 (Fla. 4th DCA 1967), affirmed sub nom. Home Federal Savings and Loan Association of Hollywood v. Emile, 216 So.2d 443 (Fla.1968).
2. Section 10 — Special designation coupled with other facts. Since there was no special designation of the account, this section is inapplicable to our discussion.
3. Section 11 — Words on deposited check or note indicating third persons’ interest. There were four deposits into the Virginia checking account in May of 1973. Three of the deposits were checks from Winn-Dixie. The deposit slips accompanying these checks contained only some numbers and a reference to Winn-Dixie Stores, Inc. The other deposit was a $25,000 check from an unrelated party. Since the checks written by Virginia to Electrical and Keene did not reach the Bank for payment until the day following the Bank’s exercise of its right to setoff, any wording on these checks could not have been notice to the Bank.
4. Section 12 — Knowledge of nature of depositor’s business. There is no doubt that Bank knew that Virginia used its account to deposit monies received for jobs from which it paid its subcontractors because Bank had previously loaned money to Virginia based on work in progress and requests to the owners for payments'. However, the opening paragraph of this section states:
“In a number of cases it has been held that a bank’s knowledge of the nature of the business of a person having an account with it, coupled with the common knowledge that a person in such a business customarily handles funds of others, is not sufficient to charge the bank with knowledge or notice that funds deposited in that account may belong to others.” (Emphasis added.)
In American Lumberman’s Mutual Casualty Company of Illinois v. Bradley Construction Co., 129 N.J.Eq. 278, 19 A.2d 242 (1941), a general building contractor engaged in building a public school deposited payments on the school contract from time to time into a checking account along with other funds received by the contractor for performance of private contract work. The bank exercised its right of setoff against the account. The receiver for the insolvent contractor claimed that because of a New Jersey statute, the monies received by the contractor on account of the school contract were trust funds for the benefit of laborers, contractors, and materialmen. The court upheld the setoff and stated:
“The Vice Chancellor in construing the Statute held that these public monies in the hands of the contractor were trust funds but when deposited with third parties who had no notice thereof, these monies were free of the trust once they were deposited with other monies in the general bank account of the contractor. We think that the determination of the learned Vice Chancellor, in construing the Statute, was entirely correct.”
The Second Circuit Court of Appeals reached a similar result in Western Assur. Co. v. Genesee Valley Trust Co., 171 F.2d 664 (2d Cir. 1948), involving an insurance agency which maintained a checking account in its own name. The agency deposited in this account premiums collected for various insurance companies as well as rent from office space which the agency leased to several insurance companies. The *930 agency drew checks on the account to pay premiums due the insurance companies and to pay the general expenses of business including salaries and rent. The bank exercised its right of setoff against the account when a loan that the bank had made to the agency became in default.
An insurance company sued to void the setoff claiming that by virtue of a New York statute the premiums collected by the agency were trust funds for its benefit, and that the bank should have known that the account was a trust fund because the bank’s officers knew the depositor was an insurance agency and should have realized that its principal resources came from premiums. While nothing on the deposited checks showed that they were premium payments, the plaintiff contended that by virtue of the fact that large checks payable to the plaintiff were regularly drawn on the account, the only purpose for which the agency would have transmitted such sums to the plaintiff was for the payment of premiums.
In affirming the refusal to void the set-off, the court stated:
“Assuming that a trust existed, nevertheless the defendant bank had a right to appropriate the trust funds to the payment of the Agency’s personal debt if the bank had no actual or constructive knowledge of the trust character of the deposit. . . .
“. . . Knowledge that premiums due plaintiff were being paid out of the account might have led to the conclusion that premium collections — trust funds— were being deposited in the account; but it might also have meant that premium collections were deposited in another account and the Agency was merely making remittances from this account. The statute did not prohibit the Age.iey from paying the amount due plaintiff out of this account and then using the premium collections for its own purposes. Albany Insurance Co. v. McAllister, 57 Hun. 594, 11 N.Y.S. 295.
“If the defendant bank had been alert, then, to check all the facts which its various employees knew, it would have had some indication that trust funds were in this account. Suspicious circumstances, however, are not enough. Defendant had no duty to be vigilant to protect plaintiff. Plaintiff must prove more than that defendant should have been aware of the possibility that the deposit was a trust fund. . . .”
(171 F.2d at 666)
The judgment entered below must be
REVERSED.
BOARDMAN, C. J., and GRIMES and DANAHY, JJ., concur.

. Capital contributions of stockholders were deposited into this account along with payments received on various jobs.

. Virginia had other accounts. Bank’s vice president testified that Virginia also had a payroll account and a trust account where federal tax monies were deposited. Virginia’s former bookkeeper did not recall the existence of the other two accounts, though he conceded the possibility that there may have been one. He did state that Virginia also had an account at another bank.

. Cf. Houdaille-Duval-Wright Co. v. Congdon, 237 So.2d 305 (Fla. 2d DCA 1970).

. The case of Century lndem. Co. v. Bank of Gowanda, Sup., 35 N.Y.S.2d 396 (1941), affirmed 263 App.Div. 1068, 35 N.Y.S.2d 463, app den 264 App.Div. 834, 36 N.Y.S.2d 417, rearg den 264 App.Div. 986, 37 N.Y.S.2d 493, and 265 App.Div. 907, 38 N.Y.S.2d 318, which might otherwise be a strong case in support of the judgment entered below turned on the question of actual notice.